FILED & JUDGMENT ENTERED
Steven T. Salata

February 20 2019

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| **SONJA WILSON,** ) | Chapter 13 |
| ) | Case No. 18-30832 |
| Debtor. ) | |
| _____ ) | |

**ORDER DENYING DEBTOR'S MOTION TO RECONSIDER, REFERRING DEBTOR AND RICHARD WATKINS TO THE UNITED STATES ATTORNEY, AND BARRING RICHARD WATKINS FROM FILING BANKRUPTCY PETITIONS FOR ANYONE OTHER THAN HIMSELF**

**THIS MATTER** is before the court on the pro se Debtor's motion to reconsider ("Motion") this court's Order Dismissing Case, Barring Refiling for 180 Days, and Referring Matter to the United States Attorney ("Order") and the court's Order Requiring Richard Watkins to Appear and Show Cause ("Watkins Show Cause Order"). After several hearings and consideration of testimony by the Debtor, Richard Watkins ("Watkins"), a Deputy Clerk of this court, and a member of the Bankruptcy Administrator's staff, the court determines, as further explained below, that it should deny the Motion and refer the Debtor and Watkins to the United States Attorney for his investigation of possible civil

and/or criminal liability for their apparent bankruptcy fraud and perjury and for possible violations of the statute regulating the behavior of bankruptcy petition preparers by Watkins.  In addition, the court will bar Watkins from filing bankruptcy petitions on behalf of anyone other than himself.

This case commenced with the filing of a "bare-bones" voluntary petition on May 31, 2018.  On the same date, the court entered an Order to Appear and Show Cause, Instructing the Clerk to Remove the Listed Social Security [Number] from the Docket, and Noting the Absence of an Automatic Stay ("Debtor Show Cause Order").  The Debtor Show Cause Order notes that the Debtor was ineligible for bankruptcy relief at that time because the order dismissing the Debtor's prior case, case no. 17-32040, barred future filings for a period of 180 days from its entry on February 16, 2018.  The Debtor Show Cause Order further noted that the Debtor's alleged Social Security number in her new case differed from the number in her prior cases, observed that the Debtor appeared to be using a false Social Security number to prevent the court from recognizing her ineligibility for bankruptcy relief, required the Debtor to show cause why she should not be referred to the United States Attorney, and set a hearing on June 12, 2018.  The Debtor did not appear at the hearing, and the court entered the Order on June 20, 2018.

The Order dismisses this case, bars the Debtor from filing future cases for 180 days from its entry, and refers the Debtor

to the United States Attorney for the Western District of North Carolina for his consideration of whether to investigate and/or prosecute the Debtor for bankruptcy fraud or other criminal charges based on her apparently intentional use of a false Social Security number in connection with this case.  The Debtor filed her Motion on June 26, 2018.  While the court docketed the Debtor's untitled Motion as a motion to reconsider the dismissal of this case, the Motion does not ask the court to reconsider the dismissal; instead, the Motion seeks to explain the Debtor's situation and actions and implicitly requests that the court reconsider the portion of the Order that referred the Debtor to the United States Attorney.  The court's June 29, 2018 Order Setting Hearing on Debtor's Motion to Reconsider Dismissal of Case set a hearing on the Motion on July 10, 2018.

    The Debtor, the Bankruptcy Administrator, and the Chapter 13 Trustee appeared at the July 10 hearing.  After briefly hearing from the Debtor, the court continued the hearing so that the court could take evidence at a subsequent hearing.  The court also noted that it would contact the United States Attorney to ask that he postpone any actions related to the referral until the court could fully consider the Motion.

    The court subsequently held a special setting for the Motion on September 13, 2018.  The Debtor and the Bankruptcy

Administrator[1] appeared at the hearing. Carrie Howey ("Howey"), a Deputy Clerk who specializes in customer service for the court, testified that a man filed the Debtor's petition, he claimed to be filing the petition on behalf of his wife, he filled out and signed the Debtor's name on her Statement of Social Security Number(s), he had a copy of the Debtor's government-issued identification card, and he said he did not have his own identification card but would return with it. Howey said that the man did not return with his identification.

    Next, the Debtor testified. She began by describing her prior bankruptcy cases and said they were all filed to try to prevent the foreclosure sale of her home.[2] The Debtor confirmed that she knew the court had barred her from filing bankruptcy for 180 days at the conclusion of case no. 17-32040. Several people, including Watkins, contacted her prior to the commencement of this case when her home again went into foreclosure. According to the Debtor, Watkins was very convincing about his ability to help the Debtor sell her home and avoid foreclosure without filing a new bankruptcy case. The Debtor said she had not planned to do anything to try to prevent the newest foreclosure but changed her mind on May 31, 2018 and decided to let Watkins do "whatever he needed to do," agreed to

---

[1] The Bankruptcy Administrator clarified that she was appearing in a fact-finding role and not as an advocate for the pro se Debtor.
[2] This case is the Debtor's fifth Chapter 13 bankruptcy case since 2013. All of her cases have been unsuccessful and dismissed by the court relatively quickly.

4

pay him $300, and paid him the first "half" (actually $195.81). The Debtor claimed that Watkins knew she could not file bankruptcy but acknowledged that she assumed he would do something in a court because he took a copy of her identification.

While her testimony in this regard was not completely clear, the Debtor claimed that the incorrect Social Security number listed on her petition was an "honest mistake." The Debtor testified that she texted the wrong number to Watkins but wrote it down correctly for him before the petition was filed with the court. At one point, the Debtor claimed that she asked Watkins why he "changed" her Social Security number before returning to the "honest mistake" narrative.

The Debtor told the court that she did not open mail related to this case until she received the Order and wondered, belatedly, why she was getting mail from the court.[3] She said she then asked Watkins why he commenced this case. According to the Debtor, Watkins did not explain why he filed her petition but assured her that it was an "honest mistake" and said he would take care of the issue with her Social Security number.

After the Debtor testified at the September 13 hearing, the court heard from Anne Whitley ("Whitley"), a Case Administration Manager for the Bankruptcy Administrator. Whitley testified

---

[3] According to the court's docket, the Debtor received a Notice of Deficient Filing and the Debtor Show Cause Order shortly after the commencement of this case and about three weeks before she received the Order.

about her attempts to locate and subpoena Watkins.[4] After Whitley's testimony, the Bankruptcy Administrator told the court that she was confident that the Debtor did not personally file her petition in this case, but the more difficult question was whether she authorized the filing, noting that the Debtor provided her Social Security number and identification to Watkins and knew that those were requirements for filing a bankruptcy case. The Bankruptcy Administrator suggested that the court needed to hear from Watkins prior to making a decision on the Debtor's Motion. The court agreed with the Bankruptcy Administrator and asked her to contact the United States Attorney regarding maintaining the current status quo pending a future hearing.

The court entered the Watkins Show Cause Order on September 26, 2018. The Watkins Show Cause Order thoroughly explains the proceedings so far in this case, mentions the Bankruptcy Code's regulations for bankruptcy petition preparers ("BPPs"), and requires Watkins to appear at a hearing on October 16, 2018 to show cause why he should not be sanctioned for violations of the Bankruptcy Code's BPP regulations, why he should not be enjoined from serving as a BPP in future cases, and why he should not be

---

[4] The Bankruptcy Administrator sent subpoenas for Watkins to appear at the September 13 hearing to various addresses but was unsure if they had been properly served. The Debtor, who had been in contact with Watkins prior to the September 13 hearing, confirmed that he had received at least one of the subpoenas. Watkins subsequently admitted at the October 16, 2018 hearing that he did receive a subpoena for the September 13 hearing prior to September 13, 2018.

referred to the United States Attorney.

Watkins, the Debtor, and an attorney for the Bankruptcy Administrator appeared at the October 16 hearing. Watkins' version of the events relevant to this case was similar to the Debtor's but differed in key aspects. Watkins said he was a real estate investor who contacted the Debtor because she was losing her home, and he was interested in facilitating a sale with an investor named Sammy Mancinco ("Mancinco"). He admitted that the Debtor told him that she was ineligible for bankruptcy relief but claimed that he told her that Mancinco wanted her to file this case regardless and offered to provide an attorney[5] to represent her. Watkins produced text messages that showed discussions with the Debtor about a bankruptcy filing in the days leading up to and including May 31. One of the text messages included an incorrect Social Security number for the Debtor, but the number is different from both the Debtor's actual number and the number on the Debtor's petition.

Watkins claimed that William Morgan[6] ("Morgan"), a friend of his who works as an "independent paralegal," prepared the Debtor's petition (although he also testified that he picked up the petition from the Debtor). Watkins said he paid Morgan

---

[5] Watkins said he worked with so many attorneys that he could not remember the name of the attorney who worked (or was going to work) on the Debtor's case.

[6] According to Watkins, Morgan lives in Brooklyn. Watkins did not know his address and said Morgan visits family that lives "in the Rozzelles Ferry Road area" of Charlotte every now and then. Watkins did not specifically explain the circumstances related to Morgan's alleged petition preparation in this case (i.e., he did not say whether Morgan sent the petition from Brooklyn or happened to be visiting family in Charlotte at the time).

7

$300, more than he was paid by the Debtor, to prepare the petition, and he was not worried about paying part of Morgan's fee because he was waiting for the sale of the Debtor's residence to close. Watkins testified that he did not know why Morgan did not disclose his work on the Debtor's petition.

Watkins admitted that he filed the Debtor's petition with the court but said he did so with the Debtor's authorization. Another of the text messages that Watkins provided to the court showed that he sent a picture of the Debtor's filed petition to the Debtor shortly after filing it. When the court asked about the signatures on the petition, Watkins did not directly answer the question and instead said that, during one of two visits to the school where the Debtor works on the morning of May 31, he gave the (presumably unsigned) petition to the Debtor and then got it back from her (presumably signed).[7] He subsequently explicitly said he did not know who provided most of the signatures of the Debtor's name on her petition.[8] Watkins also did not directly answer a question from the Debtor that implied that he had suggested that filing a petition without the Debtor's actual signature(s) would allow the Debtor to avoid liability for commencing the case. Finally, Watkins testified that he had filed petitions for two other debtors recently.

---

[7] The Debtor claimed that she did not sign the petition and had not even seen it prior to the September 13 hearing.

[8] Watkins testified that he thinks he signed the Debtor's name on the Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy at Howey's direction.

The Debtor's version of the facts changed somewhat when she testified after Watkins at the October 16 hearing. The Debtor followed up on her question to Watkins by stating that he told her that he would be able to clear her credit because the signatures on her new petition would not match her actual signature. She did not concede that she authorized the filing of this case (despite her testimony about Watkins' suggestion of using fake signatures), but she did admit that she knew a petition had been filed after she received the texted picture of it on May 31. The Debtor, despite her multiple prior experiences with bankruptcy procedure, claimed that she thought there was "some way around it" and that she thought it was only the beginning of a process and not a "full-fledged" bankruptcy. She also admitted at the October 16 hearing that she had prior knowledge of the June 12 hearing on the Debtor Show Cause Order and said she did not think she needed to appear because the bankruptcy was not "full-fledged." Tellingly, the Debtor testified that she thought she and Watkins, who both admitted that they had stayed in contact prior to the hearing, were "on the same page" until Watkins testified. Near the end of the hearing, the Debtor apologized for "all of this" and accepted any responsibility that the court wanted to assign to her.

The court has attempted to catalog the evidence presented in this case as clearly and concisely as possible in this order, but the actual presentation of the evidence by the Debtor and

9

Watkins, as noted by the attorney for the Bankruptcy Administrator at the October 16 hearing, was anything but clear and concise.  Details changed on the fly, the witnesses avoided giving direct answers to straightforward questions that were often repeated when the initial answers were unsatisfactory, and many of the explanations were self-serving and not credible.  The court believes that the story (or stories) told by the Debtor and Watkins included a significant amount of truth, but the witnesses changed key details where an honest admission would subject the witness to possible (or perceived) liability.

There are several reasons the court does not find the entirety of the Debtor's testimony to be credible.  First, as previously noted, the Debtor's version of the facts changed significantly after Watkins testified.  For example, the Debtor initially said that she ignored the court's "letters" about this case and did not know about its commencement.  The Debtor, however, subsequently admitted that she knew on the petition date that (some version of) a bankruptcy case had commenced after Watkins testified and produced the texted photo of the filed petition.  The Debtor claimed she did not see the petition and other documents filed under her name until months after the case commenced, but she could not explain why Watkins needed to visit her at work multiple times on May 31.  The Debtor's explanation about not promptly opening mail from the bankruptcy court, even though she knew she could not file a case, is not

10

believable, especially given the Debtor's testimony about Watkins suggesting the use of fraudulent signatures, which is an admission that she at least knew something like what actually happened could have happened.  In addition, the Debtor seemed far more upset that Watkins failed to support her initial testimony than that he allegedly filed bankruptcy in her name without her permission.  Finally, the Debtor vaguely apologized for "all of this" at the conclusion of the October 13 hearing; if the Debtor's initial story was true, she would not have much for which to apologize.

    Similarly, while Watkins may have been telling the truth about the Debtor authorizing the filing of her petition, he studiously avoided admitting to any wrongdoing,[9] even when his explanations defied belief.  He claimed that he did not prepare the Debtor's petition and, instead, a mysterious "independent paralegal" from somewhere in Brooklyn who visits family in Charlotte did the work.  According to Watkins, an attorney was supposed to be involved in the Debtor's case, but Watkins could not remember the attorney's name.  He said he did not keep any of the Debtor's money, despite producing a text discussion of the payment, and even paid additional funds of his own to Morgan.  He did not know who signed the Debtor's documents even though he admitted to facilitating its filing, and he was not

---

[9] The detail in the Watkins Show Cause Order may have unintentionally provided Watkins a primer for which details he needed to avoid admitting.

11

sure if he signed one of the signatures as alleged by Howey. Watkins failed to adequately explain the alleged mistake that led to an incorrect Social Security number appearing on the Debtor's petition.

In short, the court believes that the parties actually met as they described after Watkins acquired the Debtor's contact information from public foreclosure records, and Watkins told the Debtor that he could help save her house. Watkins did visit the Debtor while she was working on May 31. The Debtor paid Watkins $195.81, and the court believes that she was supposed to pay him more. The Debtor told Watkins that she could not file bankruptcy; however, contrary to their testimony, Watkins probably convinced her to authorize the filing over her initial objection. Similarly, the Debtor likely went along with Watkins' suggestions of the use of a fraudulent Social Security number and having someone else sign the Debtor's name in order to support her subsequent claims to have not been responsible for the filing. There is probably not an investor named Sammy Mancinco who was involved in this matter, and the court seriously doubts that a paralegal named William Morgan and the unnamed attorney were involved.

18 U.S.C. § 3057 requires any judge with reasonable grounds to believe that a violation of chapter 9 of title 18 "or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans" has occurred to report

12

all of the facts and circumstances, the names of the witnesses, and the offense or offenses that the judge believes have been committed to the appropriate United States Attorney. 18 U.S.C. § 157, which is part of chapter 9, prohibits bankruptcy fraud and says:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
> (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;
> (2) files a document in a proceeding under title 11; or
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
>
> shall be fined under this title, imprisoned not more than 5 years, or both.

It appears that Watkins designed a scheme to file a bankruptcy case using a false Social Security number and fake signatures, and the Debtor, perhaps reluctantly and out of desperation, went along with it. In doing so, the Debtor and Watkins appear to have violated § 157.

18 U.S.C. § 1621 provides that any person who has taken an oath to testify truthfully in a court proceeding "willfully and contrary to such oath states or subscribes any material matter

13

which he does not believe to be true . . . is guilty of perjury and shall . . . be fined under this title or imprisoned not more than five years, or both." See also 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").  The Debtor and Watkins took oaths to tell "the truth, the whole truth, and nothing but the truth" at the hearings in this case, and the Debtor's petition was filed under penalty of perjury.  Both the Debtor and Watkins violated their oaths in their testimony in this court and appear to have violated § 1746 by including a false Social Security number and fraudulent signatures in the Debtor's petition.

11 U.S.C. § 110 regulates the actions of BPPs and provides sanctions for violations.  See generally In re Bodrick, Nos. 14-31516, 14-31542, 2016 WL 1555593 (Bankr. W.D.N.C. Apr. 14, 2016) (sanctioning a BPP for violations of § 110 in two bankruptcy cases).  The sanctions for violations of § 110 can be significant.  See In re Branch, 504 B.R. 634, 649 (Bankr. E.D. Cal. 2014) (imposing sanctions totaling $40,550 against a BPP). Similarly, § 110 tightly regulates the permissible acts for BPPs, and "a BPP who observes the requirements of § 110 is a typist; he is not an attorney, and he is not even a paralegal." Bodrick, 2016 WL 1555593, at *4 (citing Wieland v. Assaf (In re Briones-Coroy), 481 B.R. 685, 690 (Bankr. D. Colo. 2012); U.S. Trustee v. Brown (In re Martin), 424 B.R. 496, 505 n.6 (Bankr. D.N.M. 2010); In re Moore, 290 B.R. 287, 297–98 (Bankr. E.D.N.C.

14

2003); In re Bush, 275 B.R. 69, 78 (Bankr. D. Idaho 2002); Stiles v. C.C. Bankhead, III Living Trust (In re Young), Nos. 98-3115 & 98-30735, slip op. at 15 (Bankr. W.D.N.C. Apr. 27, 1999)).

It appears that Watkins may have violated numerous provisions of § 110. For example, § 110(b)(1) requires a BPP to sign and print her name on every document that she prepares for a debtor, and Watkins did not sign any of the documents that he filed on behalf of the Debtor. Section 110(b)(2) mandates that BPPs provide written notice about their role in a bankruptcy case to the debtor prior to preparing a document or accepting any fees. There is no indication in the evidence before this court that Watkins provided written notice of anything to the Debtor. Section 110(c) requires individuals who serve as BPPs to list their Social Security numbers on documents that they prepare; Watkins' Social Security number is not disclosed in any of the documents. BPPs must also give debtors copies of the documents that they prepare, § 110(d), and Watkins apparently did not provide any copies of any documents to the Debtor. BPPs cannot sign any documents on behalf of a debtor, § 110(e)(1), and Watkins admitted to signing the Debtor's name on one document and likely signed more. Section 110(e)(2) prevents BPPs from providing any legal advice, including whether a petition should be filed, to debtors; Watkins not only advised the Debtor to file this case, he apparently overcame her

15

reluctance to do so. BPPs must disclose the fees they charge to debtors, § 110(h)(2), and Watkins' fee was not disclosed. Courts can fine BPPs up to $500 for each failure to comply with § 110(b), (c), (d), (e), and (h), § 110(l)(1), and the court "shall" triple the amount of the fine if a BPP suggests the use of a false Social Security number, does not inform a debtor that he is commencing a bankruptcy case, or fails to disclose his identify on any document, § 110(l)(2). Since the fines are imposed per document, signature, etc., and should be tripled under the facts of this case, Watkins could face a significant monetary fine. In addition, § 110(j) allows courts to bar people who repeatedly violate the Bankruptcy Code and/or engage in fraudulent, unfair, or deceptive conduct from serving as BPPs.

The court suspects Watkins may have served as an undisclosed BPP in this case and violated the Bankruptcy Code's regulations to a significant extent, but it will not impose monetary sanctions at this time and will instead refer the issue to the United States Attorney along with its other concerns. This matter came before the court in the context of the Debtor's Motion, and the court's primary concern at the hearings was investigating the incorrect Social Security number and the circumstances surrounding the filing of the Debtor's petition. The Bankruptcy Administrator's office appeared at the hearings in a fact-finding role but did not seek sanctions pursuant to

16

§ 110. As a result, the BPP issue was not thoroughly explored at the hearings. In addition, the two main witnesses to any possible violations of § 110, the Debtor and Watkins, were not candid in their testimony to the court. While the court will not impose monetary sanctions on Watkins at this time, it will bar him from filing bankruptcy petitions on behalf of others based on his role in this case.

Accordingly, the Debtor's Motion is hereby **DENIED**, and, pursuant to 18 U.S.C. § 3057, the court hereby **REFERS THE DEBTOR, SONJA WILSON, AND RICHARD WATKINS TO THE UNITED STATES ATTORNEY FOR THE WESTERN DISTRICT OF NORTH CAROLINA** for his consideration of whether to investigate and/or prosecute the Debtor and Watkins for their violations of 18 U.S.C. §§ 157 & 1621 and 28 U.S.C. § 1746 and Watkins for his violations of 11 U.S.C. § 110. In addition, the court hereby **BARS RICHARD WATKINS FROM FILING BANKRUPTCY PETITIONS ON BEHALF OF ANYONE OTHER THAN HIMSELF** pursuant to 11 U.S.C. §§ 105 & 110(j)(2)(B).

**SO ORDERED.**

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court